CAROLYN HUNT COTTRELL (SBN 166977)
NICOLE N. COON (SBN 286283)
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone:   (415) 421-7100
Facsimile:    (415) 421-7105
Email: ccottrell@schneiderwallace.com
         ncoon@schneiderwallace.com

KAREN C. CARRERA (SBN 165675)
VIRGINIA VILLEGAS (SBN 179062)
VILLEGAS CARRERA, LLP
170 Columbus Avenue, Suite 300
San Francisco, California 94133
Telephone: (415) 989-8000
Facsimile:  (415) 989-8028
Email:  karen@e-licenciados.com
         virginia@e-licenciados.com

Attorneys for Plaintiff and the Putative Class/Collective

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MEZA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>S.S. SKIKOS, INC.; S.S. SKIKOS DISTRIBUTION, INC.; and S.S. SKIKOS ENTERPRISES, LLC, DBA SKIKOS TRUCKING, INC.<br><br>        Defendants. | Case No. 3:15-cv-01889-TEH<br>Hon. Thelton E. Henderson<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:  February 22, 2016<br>Time: 10:00 a.m.<br>Ctrm: 2 |

TO ALL PARTIES AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Monday, February 22, 2016 at 10:00 a.m. in Courtroom 2 before Judge Thelton E. Henderson of the United States District Court, Northern District of California, 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Plaintiff Jose Meza ("Plaintiff") will move the Court for preliminary approval of the Stipulation of Settlement and Release ("Stipulation of Settlement") (attached as **Exhibit 1** to this motion).  In particular, Plaintiff moves for orders:

(1) granting preliminary approval of the Stipulation of Settlement;

(2) conditionally certifying the California Class for settlement purposes;

(3) conditionally certifying the California FLSA Class for settlement purposes;

(4) approving the proposed schedule and procedure for completing the final approval process, including scheduling the final fairness hearing date;

(5) approving the Notice Packet (attached as **Exhibits 1-3** to the Stipulation of Settlement);

(6) preliminarily appointing and approving Schneider Wallace Cottrell Konecky Wotkyns LLP and Villegas Carrera, LLP, as class counsel;

(7) preliminarily approving class counsel's request for attorney's fees and costs;

(8) preliminarily appointing and approving Plaintiff as class representative;

(9) preliminarily appointing and approving Simpluris, Inc. as the Settlement Administrator; and

(10) authorizing the Settlement Administrator to mail the approved Notice to the California Class and the California FLSA Class.

This Motion is based on this notice, the following attached Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell ("Cottrell Decl."), and all other records, pleadings, and papers on file in this action and other such evidence or argument as may be presented to the Court at the hearing on this Motion.  Accompanying this Motion is also Plaintiff's Proposed Order Granting Preliminary Approval of Settlement.

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................1

II.    FACTUAL BACKGROUND ................................................................................1

III.   PROCEDURAL HISTORY ..................................................................................2

     A.     Plaintiff's Claims ....................................................................................2

     B.     Informal Discovery .................................................................................2

     C.     Damages Analysis ...................................................................................2

     D.     Mediation ................................................................................................4

IV.   TERMS OF THE SETTLEMENT .......................................................................4

     A.     Basic Terms .............................................................................................4

     B.     Class and Collective Definitions.............................................................5

     C.     Allocation and Awards ...........................................................................6

     D.     Scope of Release and Final Judgment ....................................................8

     E.     Settlement Administration ......................................................................9

V.    ARGUMENT .......................................................................................................9

     A.     Legal Standard ........................................................................................9

     B.     The Court Should Certify the California Class for Settlement Purposes.............10

          1. The California Class is numerous. ..............................................................10

          2. Plaintiff's claims raise common issues of fact and law. ..............................11

          3. Plaintiff's claims are typical of the California Class. ...................................11

          4. Plaintiff and Class Counsel will adequately represent the California Class. 12

          5. The Rule 23(b)(3) requirements for certification are also met. ...................12

     C.     The Court Should Conditionally Certify the California FLSA Class .................13

     D.     The Settlement Should Be Preliminarily Approved Because it is Fair, Reasonable, and Adequate ...............................................................14

          1. The terms of the Settlement are fair, reasonable, and adequate...................15

          2. The allocation of the settlement fund is fair. ...............................................17

3. The extensive informal discovery exchange between the Parties enabled them to make informed decisions regarding settlement. ..............................17

4. Litigating this action would delay recovery and would be expensive, time consuming, and risky………………………………………………………..18

5. The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. .................................................18

E.      The Class Representative Enhancement Payment is Reasonable .......................19

F.      The Requested Attorneys' Fees and Costs are Reasonable ................................20

G.      The Proposed Notices and Claims Process is Reasonable...................................21

H.      The Court Should Approve the Proposed Schedule ............................................24

VI.      CONCLUSION ............................................................................................................25

# TABLE OF AUTHORITIES

**Federal Cases**

*Amchem Products, Inc. v. Windsor,*
> 521 U.S. 591 (1997) ........................................................................ 13

*Boyd v. Bechtel Corp.,*
> 485 F.Supp. 610 (N.D. Cal. 1979) ................................................... 17

*Churchill Village, L.L.C. v. Gen. Elec.,*
> 361 F.3d 566 (9th Cir. 2004) ...................................................... 15, 22

*Eisen v. Carlisle & Jacquelin,*
> 417 U.S. 156 (1974) ........................................................................ 21

*Fry v. Hayt, Hayt & Landau,*
> 198 F.R.D. 461 (E.D. Pa. 2000) ...................................................... 12

*Gen. Tel. Co. of S.W. v. Falcon,*
> 457 U.S. 147 (1982) ........................................................................ 11

*Gomez v. H&R Gunlund Ranches, Inc.,*
> 2011 WL 5884224 (E.D. Cal. 2011) ............................................... 20

*Hanlon v. Chrysler Corp.,*
> 150 F.3d 1011  (9th Cir. 1998) ........................................... 10, 11, 18

*Hoffman-La Roche, Inc. v. Sperling,*
> 493 U.S. 165 (1989) ........................................................................ 13

*Holmes v. Continental Can Co.,*
> 706 F.2d 1144 (11th Cir. 1983) ...................................................... 17

*Ikonen v. Hartz Mountain Corp.,*
> 122 F.R.D. 258 (S.D. Cal. 1988) ..................................................... 10

*In re Activision Sec. Litig.,*
> 723 F.Supp. 1373 (N.D. Cal. 1989) ................................................. 20

*In re Armored Car Antitrust Litig.*,

    472 F.Supp. 1357 (N.D. 1979) ...........................................................................................15

*In re Four Seasons Secs. Laws Litig.*,

    58 F.R.D. 19 (W.D. Okla.1972) ..........................................................................................15

*In re Mego Financial Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000).................................................................................................15

*In re S. Ohio Corr. Facility*,

    175 F.R.D. 270 (S.D. Ohio 1997) .......................................................................................19

*In re Syncor ERISA Litig.*,

    516 F.3d 1095 (9th Cir. 2008) .............................................................................................15

*Ingram v. The Coca-Cola Co.*,

    200 F.R.D. 685 (N.D. Ga. 2001) .........................................................................................19

*Knight v. Red Door Salons, Inc.*,

    2009 WL 248367 (N.D. Cal. 2009).....................................................................................20

*Lewis v. Starbucks Corp.*,

    2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ...................................................................17

*Monterrubio v. Best Buy Stores, L.P.*,

    291 F.R.D. 443 (E.D. Cal. 2013).........................................................................................17

*Mousai v. E-Loan, Inc.*,

    No. C 06-01993 SI (N.D. Cal. May 30, 2007) ...................................................................20

*Mullane v. Cent. Hanover Bank & Trust Co.*,

    339 U.S. 306 (1950) .............................................................................................................22

*Nen Thio v. Genji, LLC*,

    14 F.Supp.3d 1324 (N.D. Cal. 2014)...................................................................................14

*Noyes v. Kelly Servs., Inc.*,

    2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008) ..........................21

*Officers for Justice v. Civil Serv. Comm'n*,

   688 F.2d 615 (9th Cir. 1982) ............................................................... 14, 15

*Phillips Petroleum Co. v. Shutts*,

   472 U.S. 797 (1985) .................................................................................. 21

*Powers v. Eichen*,

   229 F.3d 1249 (9th Cir. 2000) .................................................................. 20

*Ramirez v. Ghilotti Bros. Inc.*,

   941 F.Supp.2d 1197 (N.D. Cal. 2013) ..................................................... 14

*Roberts v. Texaco, Inc.*,

   979 F. Supp. 185 (S.D.N.Y. 1997) ........................................................... 19

*Romero v. Producers Dairy Foods, Inc.*,

   235 F.R.D. 474 (E.D. Cal. 2006) .............................................................. 10

*Silber v. Mabon*,

   18 F.3d 1449 (9th Cir. 1994) .................................................................... 22

*Songer v. Dillon Resources, Inc.*,

   636 F.Supp.2d 516 (N.D. Tex. 2009) ...................................................... 4, 5

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) .............................................................. 19, 20

*Van Vranken v. Atl. Richfield Co.*,

   901 F. Supp. 294 (N.D. Cal. 1995) .......................................................... 19

*Vasquez v. Coast Valley Roofing*,

   266 F.R.D. 482 (E.D. Cal. 2010) .............................................................. 20

*Villalpando v. Exel Direct Inc.*,

   303 F.R.D. 588 (N.D. Cal. 2014) ............................................................. 10

*Vizcaino v. Microsoft Corp.*,

   290 F.3d 1043 (9th Cir. 2002) .................................................................. 21

v

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Meza, et al. v. S.S. Skikos, et al.*, Case No. 3:15-cv-01889-TEH

*Wang v. Chinese Daily News, Inc.*,

    737 F.3d 538 (9th Cir. 2013) ...................................................................................... 11, 12

*Wren v. RGIS Inventory Specialists*,

    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................................ 15, 18, 19, 20

*Yokoyama v. Midland Nat. Life Ins. Co*.,

    594 F.3d 1087 (9th Cir. 2010) ............................................................................................ 13

**State Cases**

*Barela v. Ralph's Grocery Company*,

    No. BC070061 (Los Angeles Super. Ct. June 5, 1998) ........................................... 20

*Benton v. Telecom Network Specialists, Inc.*,

    220 Cal.App.4th 701 (2014) .............................................................................................. 13

*Big Lots Overtime Cases*,

    JCC Proceeding No. 4283 (San Bernardino Super. Ct. February 4, 2004) ........................... 20

*Castellanos* v. *The Pepsi Bottling Group*,

    No. RG07332684 (Alameda Cnty. Super. Ct., March 11, 2010) ......................... 20

*Contreras v. Bank of America*,

    No. CGC-07-467749 (San Francisco Cnty. Super. Ct., Sept. 3, 2010) ................. 19

*Davis v. The Money Store, Inc.*,

    No. 99AS01716 (Sacramento Super. Ct. Dec. 26, 2000) .......................................... 20

*Hasty v. Elec. Arts, Inc.*,

    No. CIV 444821 (San Mateo Cnty. Super. Ct., Sept. 22, 2006) ........................... 20

*Novak v. Retail Brand Alliance, Inc.*,

    No. RG 05-223254 (Alameda Cnty. Super. Ct., Sept. 22, 2009) ........................... 20

*Thurman v. Bayshore Transit Mgmt., Inc.*,

    203 Cal.App.4th 1112 (2012) ............................................................................................ 5

**Federal Statutes**

29 U.S.C. § 216(b) ........................................................................................................................ 13

vi

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Meza, et al. v. S.S. Skikos, et al.*, Case No. 3:15-cv-01889-TEH

29 U.S.C. §§ 201, *et seq* ............................................................................................ 2

**State Statutes**

Business and Professions Code §§ 17200, *et seq.* ..................................................... 2

California Labor Code § 226.2(b) ............................................................................... 3

California Labor Code § 2699(e)(2) ............................................................................ 5

**Rules and Regulations**

Federal Rule of Civil Procedure 23 .................................................................... passim

**Other Authorities**

161 Congressional Record H7659-H7661 (daily ed. Nov. 4, 2015) .......................... 16

Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992) .................................. 22, 23

Conte, Newberg on Class Actions, § 8.21 (3rd Ed. 1992) ........................................ 23

Manual for Complex Litigation, § 21.61 (4th ed. 2004) ........................................... 10

Manual for Complex Litigation, *Certification Notice,* § 21.311 (4th ed. 2004) .............................. 23

Manual for Complex Litigation, *Settlement Notice,* § 21.312 (4th Ed. 2004) ............................ 22, 23

## I.   INTRODUCTION

Plaintiff Jose Meza ("Plaintiff") seeks preliminary approval of the Stipulation of Settlement and Release ("Stipulation of Settlement" or "Settlement").  Plaintiff and Defendants S.S. Skikos, Inc., S.S. Skikos Distribution, Inc., S.S. Skikos Enterprise, LLC, dba Skikos Trucking, Inc. ("Defendant" or "Defendants," Plaintiff and Defendants are referred to collectively as the "Parties") are resolving numerous wage and hour claims that likely would not have been prosecuted as individual actions, and in so doing are providing a substantial benefit to the members of the California Class and the California FLSA Class (collectively, the "Class").  Specifically, the Parties have resolved the claims of approximately 187 of Defendants' employees for a total settlement payment of $700,000.  The Settlement represents a favorable result and is fair, reasonable, and adequate in all respects.

Plaintiff pursued this class and collective action on behalf of Defendants' current and former non-exempt delivery truck drivers who transport goods to and from Defendants' customers throughout the State of California.  This action is based on Defendants' alleged violations of federal and California labor laws.  Following extensive informal discovery, extensive arm's-length communications between counsel, and a mediation before David Rotman – an experienced and respected wage-and-hour mediator, the Parties have reached a class and collective-wide settlement of this dispute.  The proposed Settlement falls well within the range of reasonableness and satisfies the criteria for approval under federal law.  Accordingly, Plaintiff requests that the Court preliminarily approve the Settlement.

## II.   FACTUAL BACKGROUND

Defendants provide delivery services for businesses and maintain their headquarters in Santa Rosa, California.  Defendants employ drivers throughout Northern California.  Drivers transport goods from Defendants' facilities to Defendants' customers throughout the state.  Plaintiff alleges that drivers were subject to various compensation schemes, including percentage of goods hauled, by mile, flat and/or piece rate, and hourly rates.  Regardless of the compensation scheme used, Plaintiff alleges that drivers performed substantial work for which they were not paid any compensation, were subject to improper record keeping practices, were routinely denied compliant

meal and rest periods, and were subjected to an illegal "use it or lose it" vacation scheme.

### III.     PROCEDURAL HISTORY

#### A.     Plaintiff's Claims

Plaintiff alleges nine causes of action under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the California Labor Code, applicable Industrial Welfare Commission ("IWC") Wage Order, Business and Professions Code §§ 17200, *et seq.* ("UCL"), and the California Labor Code Private Attorneys General Act of 2004 ("PAGA").

In his first cause of action, Plaintiff alleges, on behalf of an FLSA collective (the "California FLSA Class"), that Defendants violated the FLSA by knowingly failing to maintain records of all hours worked, knowingly failing to compensate employees for all hours worked, and knowingly failing to compensate employees at a rate of one and one-half times their regular hourly rate for hours worked in excess of 40 hours per week.  Plaintiff's remaining eight causes of action arise under California law: (1) failure to pay overtime and double time compensation; (2) failure to pay for all hours worked; (3) failure to provide meal periods, or compensation in lieu thereof; (4) failure to provide rest periods, or compensation in lieu thereof; (5) failure to furnish accurate itemized wage statements; (6) waiting time penalties; (7) violation of the UCL as a result of unfair, unlawful, and fraudulent business practices; and (8) civil penalties pursuant to PAGA.

#### B.     Informal Discovery

The Parties engaged in an informal investigation and informal discovery.  Cottrell Decl. at ¶ 10.  Plaintiff's Counsel interviewed approximately 25 members of the putative Class and reviewed nearly 6,000 documents in their possession, including Defendants' corporate memos and portions of employee handbooks.  *Id*.  Defendants produced, and Plaintiff's Counsel reviewed, over 65,000 pages of documents, including pay reports, personnel records, route logs, driver logs, and GPS tracking information.  *Id*.  Plaintiff's Counsel have also made a thorough study of the legal principles applicable to the claims asserted against Defendants.  *Id*.

#### C.     Damages Analysis

Plaintiff's Counsel based their damages analysis and settlement negotiations on the informal discovery described above, including Defendants' timekeeping and payroll records.  Cottrell Decl.

at ¶ 11.  In their original damages analysis, Plaintiff's Counsel relied primarily on a sample of 18 of the approximately 187 putative Class Members.  *Id.*  Plaintiff's Counsel used this data to compute an hourly rate, the average number of work shifts in the relevant class periods, the average number of work weeks in the relevant class periods, and the average amount of overtime worked under both California law and the FLSA.  *Id.*  Plaintiff's Counsel also used this data to approximate the number of missed meal and rest periods under California law.  *Id.*  Plaintiff's Counsel initially used these figures to calculate total damages for missed meal periods and rest breaks, Labor Code § 226 penalties, PAGA penalties, waiting time penalties, and overtime under both California law and the FLSA.  *Id.*

On October 10, 2015, Governor Jerry Brown signed AB 1513 into law.  AB 1513 sets forth requirements for the compensation of piece-rate workers.  As relevant to this litigation, AB 1513 creates an affirmative defense to causes of action for wages, damages, liquidated damages, statutory penalties, or other civil penalties based solely on the employer's failure to timely pay the employee the compensation due for rest and recovery periods and other nonproductive time periods prior to December 31, 2015.  *See* Cal. Lab. Code § 226.2(b) (effective January 1, 2016).  A defendant can avail itself to the affirmative defense if, *inter alia*, the defendant comes into compliance with Labor Code § 226.2 by December 31, 2015 and, by December 15, 2016, defendant pays each employee an amount equal to 4 percent of that employee's gross earnings in pay periods in which any work was performed on a piece-rate basis from July 1, 2012 to December 31, 2015.  *Id.*

Plaintiff's Counsel's review of the 65,000 documents demonstrated that the putative Class Members were primarily compensated on a piece-rate basis.  Cottrell Decl. at ¶ 12.  Accordingly, Plaintiff's Counsel revised the damages estimate to account for AB 1513.  *Id.*  Specifically, Plaintiff's Counsel (1) computed the number of pay periods between July 1, 2012 and December 31, 2015; and (2) computed the average pay per period.  *Id.*  Then, assuming all putative Class Members worked throughout the class period, Plaintiff's Counsel used those numbers to obtain a high-end estimate of the amount of money Defendants would have to pay to take advantage of the affirmative defense provided by AB 1513.  *Id.*  This estimate was approximately $1,500,000.  *Id.*  In addition, Plaintiff's Counsel calculated that the putative Class Members could recover up to

$300,000 in Labor Code § 226 penalties, which Plaintiff would contend are not subject to the affirmative defense provided by AB 1513.  *Id*.[1]

The net amount being disbursed to Class Members is $417,690, which is approximately 23% of the high-end estimate of the total damages and penalties available to Plaintiff under California law.  *Id*. at ¶ 14.  The settlement amount is fair, reasonable, and adequate.  *Id*.  As discussed in more detail below, the settlement amount takes into account the risks inherent in any class and collective action wage-and-hour case, the status of the litigation, and the specific defenses asserted by Defendants.  *Id*.[2]

### D.  Mediation

The Parties mediated this dispute on November 19, 2015 before David Rotman, a respected and experienced wage and hour mediator.  Cottrell Decl. at ¶ 15.  The Parties' engaged in arm's-length negotiations, culminated by the execution of a memorandum of understanding setting forth settlement terms resolving this matter.  *Id*.  After the mediation, counsel for the Parties worked to finalize the settlement and corresponding notice documents, subject to the Court's approval.  *Id*.  The Stipulation of Settlement was fully-executed on January 15, 2016.  *Id*.

### IV.  TERMS OF THE SETTLEMENT

#### A.  Basic Terms

Defendants have agreed to pay a total of $700,000, the "Maximum Settlement Amount," to settle all aspects of this case.  Cottrell Decl. at ¶ 17.  The "Net Settlement Proceeds," the amount that will be available to pay settlement awards to the Class, is defined as the Maximum Settlement

---

[1] Plaintiff's Counsel would argue that Plaintiff's FLSA claim for overtime compensation is not subject to the affirmative defense created by AB 1513.  However, Plaintiff's Counsel recognized that it would be difficult to recover overtime compensation under the FLSA at all, as Defendant would argue that the putative Class Members are all subject to the Motor Carrier Act exemption. *See Songer v. Dillon Resources, Inc.*, 636 F.Supp.2d 516, 521-22 (N.D. Tex. 2009) (describing Motor Carrier Act exemption).

[2] Indeed, at the time of settlement it appeared likely that the Denham Amendment to the House Transportation Bill pending in Congress would be passed into law, further limiting Plaintiff's potential recovery on the claims for unpaid rest and meal break premiums.  Cottrell Decl. at ¶ 13.

1  Amount less the Fee and Expense Award (Plaintiff will seek a fee award not to exceed 33 1/3% of

2  the Maximum Settlement Amount, or $233,310 and an expense award not to exceed $22,000[3]), the

3  Service Payment (up to $7,500), the PAGA Payment to the Labor and Workforce Development

4  Agency based on the $10,000 allocated for the PAGA claims ($7,500)[4], and Administration Costs

5  ($12,000).  **Exhibit I** § A(1), (23), (30), (32), (37), (43).  At this time, the Net Settlement Proceeds

6  are estimated to be $417,690.

7  **B.     Class and Collective Definitions**

8        The "California Class" is defined to mean "all current and former Drivers employed by

9  Defendants in California during the California Class Period."  **Exhibit 1** § A(2).  The "California

10  Class Period" is "the period beginning April 27, 2011 through the date of Preliminary Approval."

11  *Id.* at § A(4).[5]

12        The "California FLSA Class"[6] is defined as "all current and former Drivers who were

13  employed by Defendants in California during the California FLSA Class Period."  *Id.* at § A(6).[7]

14  ───────────────────────────

15  [3] Counsel will seek fees and costs in a separate motion filed 14 days before the deadline for

16  submitting objections.

[4] Pursuant to Plaintiff's initial calculation, the PAGA claim gave rise to about 2.7% of Plaintiff's

17  total estimated recovery.  Cottrell Decl. at ¶ 18.  After excluding attorney's fees and costs, the

18  Service Payment, and Administration Costs, there is approximately $425,190 left for distribution.

The $10,000 PAGA allocation is about 2.3% of that figure.  $7,500 of that allocation is paid to the

19  Labor and Workforce Development Agency, and the remaining $2,500 will be disbursed to the

Class.  Notably, assuming all of Plaintiff's claims qualify for PAGA penalties, such an award is not

20  automatic.  *See* Cal. Lab. Code § 2699(e)(2); *see also Thurman v. Bayshore Transit Mgmt., Inc.*,

203 Cal.App.4th 1112, 1135-36 (2012).

21  [5] The class definition for the California Class used in the Stipulation of Settlement is substantially

22  the same as the definition of the California Class in the operative Complaint.  *See* ECF Dkt. No. 1 at

¶ 19.

23  [6] The FLSA collective is referred to as the "California FLSA Class."

[7] Putting aside immaterial differences, the class definition for the California FLSA Class in the

24  Stipulation of Settlement differs from the definition of the California FLSA Class in the operative

25  Complaint in that the definition in the Complaint excludes individuals covered by the Motor Carrier

Act exemption.  *See* ECF Dkt. No. 1, ¶ 30.  As revised, the California FLSA Class is wholly

26  subsumed by the California Class.  The Parties disputed whether members of the California FLSA

Class were subject to the Motor Carrier Act exemption.  Cottrell Decl. at ¶ 37; *see Songer v. Dillon*

27  *Resources, Inc.*, 636 F.Supp.2d 516, 521-22 (N.D. Tex. 2009) (Motor Carrier Act exemption).  In

particular, the Parties disputed whether putative California FLSA Class Members transported

28  property in interstate or foreign commerce.  Cottrell Decl. at ¶ 37.  Plaintiff recognized the

The "California FLSA Class Period" is "the period beginning April 27, 2012 through the date of Preliminary Approval." *Id*. at § A(7).

### C.    Allocation and Awards

As noted above, the Net Settlement Proceeds to be paid to the Class are estimated to be $417,690. 90% of the Net Settlement Proceeds shall be allocated to the California Class and 10% of the Net Settlement Proceeds shall be allocated to the California FLSA Class. **Exhibit 1** § A(32).

California Class Members who do not opt out of the Settlement will be eligible to receive their share of the Net Settlement Proceeds allocated to the California Class. *Id*. at § C(51)(b). To recover a share of the Net Settlement Proceeds allocated to the California FLSA Class, a potential California FLSA Class Member must opt in by timely submitting a "California FLSA Opt In Form." *See id*. at §§ C(51)(b), H(64).

Each Class Member's "Individual Settlement Payment" will be calculated as follows: (1) using Defendants' records, and approximations and averages where data is missing or otherwise unavailable, the Settlement Administrator will calculate the number of workweeks worked by each participating Class Member during the pertinent class period; (2) the Settlement Administrator will calculate each California Class Member's "California Percentage Share" by dividing the number of workweeks worked by each California Class Member in the California Class Period by the total number of workweeks worked by all California Class Members in the same period; (3) the Settlement Administrator will calculate each California Class Member's share of the settlement funds allocated to the California Class by multiplying the California Percentage Share by 90% of the Net Settlement Proceeds; (4) where applicable, the Settlement Administrator will calculate each California FLSA's Class Member's "California FLSA Percentage Share" by dividing the number of workweeks worked by each California FLSA Class Member during the California FLSA Class Period by the total number of workweeks worked by all California FLSA Class Members in the

possibility that Defendants could prevail on this issue. *Id*. Through the Stipulation of Settlement, the Parties have settled their differences on this issue. By modifying the class definition, the Parties are resolving the FLSA claims of all of Defendants' drivers.

1   same period; (5) where applicable, the Settlement Administrator will calculate each California

2   FLSA Class Member's share of the settlement funds allocated to the California FLSA Class by

3   multiplying the California FLSA Percentage Share by 10% of the Net Settlement Proceeds; and (6)

4   for each individual Class Member, that Class Member's share of the recovery allocated to the

5   California Class and the recovery allocated to the California FLSA Class will be combined to obtain

6   the Individual Settlement Payment.  *Id.* at §§ A(10), (13), (26)-(27), C(51)(b).[8]  The Individual

7   Settlement Payments will be allocated "25% to settlement of wages claims, which will be subject to

8   required tax withholdings; and 75% to settlement of claims for liquidated damages, interest and/or

9   statutory penalties, which will be paid without withholding any amount.  The portion allocated to

10  wages shall be reported on an IRS Form W-2, and the portion allocated to liquidated damages,

11  interest and statutory penalties shall be reported on an IRS Form 1099."  *Id.* at § C(51)(b).

12          Each Class Member will be notified of the number of weeks Defendants' records show that

13  he or she worked and their estimated recovery assuming full participation in the "California Class

14  Form" and the "California FLSA Opt In Form."  *Id.* at §§ A(3), (9), H(65).  Should a Class Member

15  dispute Defendants' records, that Class Member may submit evidence to the Settlement

16  Administrator establishing the dates he or she contends to have worked for Defendants.  *Id.* at §

17  H(65).  The Settlement Administrator shall notify the Parties of any disputes, and shall finally

18  resolve any disputes.  *Id.*  In this process, Defendants' records will be presumed determinative.  *Id.*

19          Individual Settlement Awards will be paid via checks mailed or wired by the Settlement

20  Administrator no later than fourteen calendar days after the "Payment Obligation and Class Release

21  Date."[9]  *Id.* at § H(72).  The checks will be void if not cashed or deposited within 180 days after

22

23  _____

24  [8] This allocation system will provide the most effective means practicable to apportion recovery, in
    view of the nature of Defendants' records.  The amount of time Class Members worked is a fair
25  proxy for the extent of violations Class Members experienced, given the nature of the claims.
    Cottrell Declaration at ¶ 38.
26
    [9] "Payment Obligation and Class Release Date" means "(a) the date when the Final Approval Order
27  is signed, if there are no objectors, or (b) in the event there are objectors, thirty-two days after
    service of notice of entry of the Final Approval Order and Judgment on the Parties and all objectors
28  to the Settlement without any appeals or requests for review being taken, or (c) [the date on which]

1  mailing.  *Id*.  Any funds from any uncashed checks will escheat to the California Industrial

2  Relations Unclaimed Wages Fund.  *Id*.[10]

3                    **D.      Scope of Release and Final Judgment**

4         The Stipulation of Settlement contains three releases.  In all of the releases, the "Released

5  Parties" are "Defendant S.S. Skikos, Inc.; S.S. Skikos Distribution, Inc.; S.S. Skikos Enterprises,

6  LLC, d/b/a Skikos Trucking, Inc., its past or present successors and predecessors in interest,

7  subsidiaries, affiliates, parents, officers, directors, shareholders, employees, agents, principals,

8  heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, and their

9  respective successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys."

10  **Exhibit I** §§ A(42), D-F.  The releases impacting the Class are appropriately tailored to the claims

11  in this case.[11]

12

13

14

15  orders affirming said Final Approval Order and Judgment or denying review after exhaustion of all
    appellate remedies [issue], if appeals or requests for review have been taken."  **Exhibit I** § A(39).

16  [10] The California Industrial Relations Unclaimed Wages Fund refers to the California Industrial
    Relations Unpaid Wage Fund, which holds funds until they may be remitted to the worker or, if not

17  claimed by the worker, until the funds are deposited into the General Fund.  Cottrell Decl. at ¶ 25.

18  [11] The claims included in the release concerning the California Class are: "all claims, demands,
    rights, liabilities and causes of action that were or could have been asserted (whether in tort,

19  contract or otherwise) for violation of the California Labor Code, the California Business &
    Professions Code, the Labor Code Private Attorneys General Act of 2004, the applicable Industrial

20  Welfare Commission Wage Orders or any similar state or federal law, whether for unpaid wages,
    economic damages, non-economic damages, liquidated damages, punitive damages, restitution,

21  penalties, other monies, or other relief arising out of, relating to, or in connection with any facts
    and/or claims pled in the complaint, which are or could be the basis of claims that Defendant failed

22  to provide all wages and overtime wages due, failed to pay the minimum wage, failed to provide
    timely or accurate final paychecks, failed to timely pay compensation, engaged in recordkeeping

23  violations, failed to provide accurate itemized wage statements, failed to provide meal breaks, failed
    to authorize or permit rest breaks, and/or engaged in unfair business practices based on the

24  foregoing violations, at any times during the California Class Period."  **Exhibit I** §§ A(5), D.  The
    claims included in the release concerning the California FLSA Class are: "all claims, demands

25  rights liabilities and causes of action that were or could have been asserted (whether in tort,
    contract, or otherwise) for violation of the Fair Labor Standards Act whether for unpaid wages,

26  economic damages, non-economic damages, liquidated damages, punitive damages, restitution,
    penalties, other monies, or other relief arising out of, or relating to, or in connection with any facts

27  and/or claims pled in the complaint, which are or could be the basis of claims that Defendant failed

28

### E.   Settlement Administration

The Parties have agreed to use Simpluris, Inc. as the Settlement Administrator.  Simpluris has estimated that its costs will be approximately $12,000.  Cottrell Decl. at ¶ 26.  These costs are reasonable given the estimated value of the average individual claims, $2,233.64, as they are appropriate to ensure that Class Members have a full opportunity to learn about the Settlement and to obtain their share of the Settlement, if they desire to do so.[12]

The Settlement Administrator will be responsible for updating Class Members addresses using the National Change of Address ("NCOA") Database, mailing "Notice Packets"[13] to Class Members, remailing Notice Packets if they are returned as undeliverable with a forwarding address, making reasonable efforts – including a skip trace – to update addresses if Notice Packets are returned as undeliverable without a forwarding address and remailing the Notice Packets to such an updated address, setting up and maintaining a settlement website, processing California FLSA Opt In Forms, resolving work week disputes, calculating Individual Settlement Payments, calculating payroll taxes, and managing all disbursements to the Class Members.  **Exhibit 1** §§ A(34), C(51)(a), H.

### V.   ARGUMENT

#### A.   Legal Standard

A certified class action may not be dismissed, compromised, or settled without approval of the Court.  *See* FED. R. CIV. P. 23(e).  Proper review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.  Manual for Complex

---

to provide all wages and overtime wages de, failed to pay the minimum wage, and/or engaged in recordkeeping violations, at any time during the California FLSA Class Period."  *Id*. at §§ A(8), E.
[12] Assuming all of the approximately 187 Class Members participate in the Settlement and the Net Settlement Proceeds are $417,690, the average value of the Settlement will be $2,233.64.
[13] The Notice, California Class Form, and California FLSA Opt In Form.

Litigation, § 21.61 (4th ed. 2004).  The decision to approve or reject a proposed settlement is committed to the sound discretion of the court.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (FED. R. CIV. P. 23(a), (b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (FED. R. CIV. P. 23(e)(2)).

### B. The Court Should Certify the California Class for Settlement Purposes

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class.  FED. R. CIV. P. 23(a).  Furthermore, Rule 23(b)(3) provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  The California Class meets all of these requirements.  *See, e.g.*, *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-10 (N.D. Cal. 2014) (certifying class of delivery drivers alleging wage and hour claims, including minimum wage, overtime, and meal and rest period claims).

### 1. The California Class is numerous.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable.  FED. R. CIV. P. 23(a)(1).  While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006).

The California Class includes approximately 187 members.  Cottrell Decl. at ¶ 29.  This includes approximately 41 current employees and approximately 146 former employees.  *Id.*  The

1   California Class is sufficiently large that joinder of all members would be impracticable.  *Id*.

2   **2.   Plaintiff's claims raise common issues of fact and law.**

3   The commonality requirement of FED. R. CIV. P. 23(a)(2) is satisfied so long as there is even

4   a single common question of law or fact capable of class-wide resolution.  *Wang v. Chinese Daily*

5   *News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

6   1019 (9th Cir. 1998) (Rule 23(a)(2) has been construed permissively).

7   In the Complaint, Plaintiff listed numerous questions that will be common to the California

8   Class.  *See* ECF Dkt. No. 1, ¶ 22.  Common factual questions presented in this action will include

9   whether Defendants, pursuant to a uniform policy, maintain accurate records of hours worked, pay

10  California Class Members for all hours worked, pay California Class Members overtime, pay

11  California Class Members minimum wages, permit California Class Members to take the meal and

12  rest periods to which they are entitled under California law, provide California Class Members with

13  timely and accurate wage statements, and pay California Class Members all wages due upon the

14  end of employment.  Cottrell Decl. at ¶ 30.  Common legal questions presented in this action will

15  include whether, through the above uniform conduct, Defendants violated the California Labor

16  Code, committed unfair businesses practices within the purview of the UCL, and are liable for civil

17  penalties pursuant to PAGA.  *Id*.  Because these questions are capable of class-wide resolution, the

18  commonality requirement is satisfied.

19  **3.   Plaintiff's claims are typical of the California Class.**

20  Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of

21  the claims or defenses of the class."  "Under the rule's permissive standards, a representative's

22  claims are 'typical' if they are reasonably coextensive with those of absent class members; they

23  need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  To satisfy the requirement of

24  typicality, "a class representative must be part of the class and possess the same interest and suffer

25  the same injury as the class members."  *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982).

26  Here, Plaintiff's claims are typical of those of the California Class Members.  Cottrell Decl.

27  at ¶ 31.  Plaintiff, like the California Class Members, was allegedly denied meal breaks and rest

28  breaks, was allegedly not properly compensated for all hours worked, allegedly did not receive

1   accurate itemized wage statements, and allegedly did not receive all wages due upon discharge.  *Id*.

2   Review of the policies and timekeeping records provided by putative Class Members and the

3   extensive informal discovery provided by Defendants confirmed that drivers throughout California

4   were subject to the same allegedly illegal policies and practices.  *Id*.  The typicality requirement is

5   satisfied.

6                    **4.      Plaintiff and Class Counsel will adequately represent the**

7                              **California Class.**

8         To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show

9   "[1] that the putative named plaintiff has the ability and incentive to represent the class vigorously;

10  [2] that he or she has obtained adequate counsel; and [3] that there is no conflict between the

11  individual's claims and those asserted on behalf of the class."  *Fry v. Hayt, Hayt & Landau*, 198

12  F.R.D. 461, 469 (E.D. Pa. 2000).

13        Plaintiff is adequate to represent the California Class because his claims are not antagonistic

14  to the claims of the California Class Members.  Cottrell Decl. at ¶ 32.  There is no conflict between

15  Plaintiff and the California Class.  *Id*.  Plaintiff has prosecuted this case with the interests of the

16  putative California Class, as well as the aligned interests of the California FLSA Class subsumed

17  within the California Class, in mind.  *Id*.  Moreover, Class Counsel has extensive experience in

18  class action and employment litigation, including wage and hour class actions, and does not have

19  any conflict with the California Class.  *Id*.  Plaintiff and his counsel are adequate.

20                    **5.      The Rule 23(b)(3) requirements for certification are also met.**

21        Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over

22  any questions affecting only individual members" and that a class action is "superior to other

23  available methods for fairly and efficiently adjudicating the controversy."  "The predominance

24  analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual

25  issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant

26  adjudication by representation.'"  *Wang*, 737 F.3d at 545.

27        Here, Plaintiff has identified numerous common questions of law and fact in addressing the

28  commonality element.  *See* Cottrell Decl. at ¶ 30.  The California Class' claims will turn on

Defendants' policies, and will not require individualized inquiries specific to individual class members. *Id*.[14]  The common questions will predominate over and individual issues.

Further, the class action mechanism is a superior method of adjudication compared to a multitude of individual suits.  To determine whether the class approach is superior, courts consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  FED. R. CIV. P. 23(b)(3)(A)-(D).  Here, the California Class Members do not have a strong interest in controlling the prosecution of their individual claims.  Cottrell Decl. at ¶ 33.  The class action mechanism will efficiently resolve numerous substantially identical claims at the same time, obviating the need for duplicative suits, avoiding a waste of judicial resources, and eliminating the possibility of conflicting decisions.  *Id*.  Manageability is not a concern in the settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997).  Accordingly, class treatment is superior to individual treatment of the claims in this action.

## C.   The Court Should Conditionally Certify the California FLSA Class

The FLSA permits an employee, or employees, to bring a collective action on "behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Although the FLSA does not explicitly define the term "similarly situated," district courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential "similarly situated" plaintiffs so that they may choose to "opt in" to the suit. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

---

[14] Although the amount of time worked off-the-clock and number of missed meal and rest periods may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010).  The fact that individual inquiry might be necessary to determine whether individual employees were able to take breaks despite the defendant's allegedly unlawful policy (or unlawful lack of a policy) is not a proper basis for denying certification. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (2014).  In any event, the Stipulation of Settlement implements a simple procedure for equitably distributing the Net Settlement Proceeds using the number of workweeks worked by the California Class Members.

In this Circuit, courts take a two-step approach to determine whether plaintiffs are similarly situated. *Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1203 (N.D. Cal. 2013). "First, the court makes an initial, conditional determination of whether the plaintiffs are similarly situated, 'deciding whether a collective action should be certified for the purpose of sending notice to potential class members.'" *Id*. The initial notice stage determination uses a lenient standard that typically results in certification. *Id*. Then, after discovery and usually prompted by a defendant's motion for decertification, the court makes a second determination as to the "propriety and scope of the class," considering "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Id*. At the second stage, "[a]ll that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Id*.

At present, the only question is whether Plaintiff has satisfied the lenient standard for conditional certification. *See Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1341 (N.D. Cal. 2014) (finding that conditional certification of the collective action was warranted in granting preliminary approval of the class and collective settlement). Here, the putative members of the California FLSA Class are similarly situated. Cottrell Decl. at ¶ 34. The drivers that make up the California FLSA Class was subject to the same uniform set of policies and practices as the California Class. *Id*. These uniform policies and practices were described above, and are not repeated here. *See id*. at ¶ 30. As a result of Defendants' common policies and practices exercised with respect to all of its California drivers, conditional certification of the California FLSA Class is appropriate for settlement purposes.

      **D.**      **The Settlement Should Be Preliminarily Approved Because it is Fair, Reasonable, and Adequate**

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Included in this analysis are

considerations of: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

> **1.      The terms of the Settlement are fair, reasonable, and adequate.**

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).[15] A review of the Stipulation of Settlement reveals the fairness, reasonableness, and adequacy of its terms.

The Net Settlement Proceeds of $417,690, derived from a Maximum Settlement Amount of $700,000, will result in fair and just relief to the Class Members. The Net Settlement Proceeds allocated to the California Class are $375,921. Cottrell Decl. at ¶ 38. The passage of AB 1513 was very likely to put a cap of $1,800,000[16] on Defendant's liability for all California claims. *See*

---

[15] *In re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. 1979) (settlements with a value of 1% to 8% of the estimate total damages were approved); *In re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving class settlement that was 8% of estimated total class damages).

[16] This figure is a high-end estimate. It assumes that all Class Members worked for Defendants continuously for a period of over three years. *See* Section III(C), *supra*.

1    Section III(C), *supra*.  The $375,921 recovery is approximately 21% that figure.  The Net

2    Settlement Proceeds allocated to the California FLSA Class are $41,769.  Cottrell Decl. at ¶ 38.

3    This reflects the fact that all California FLSA Class Members are also Members of the California

4    Class, and are therefore only receiving a premium for the risky FLSA overtime claim.  *See* Section

5    (V)(D)(2), *infra*.  Assuming full participation, the average damage award will be $2,233.64.[17]

6           This result is reasonable when considering the difficulty and substantial risks presented by

7    pursuing further litigation.  First, in addition to recent enactment of AB 1513, Plaintiff was faced

8    with the pendency of the Denham Amendment to the House Transportation Bill at the time Plaintiff

9    entered the settlement.  The Denham Amendment threatened to undercut the sizable California law

10   meal and rest period claims and limit the scope of tasks considered to be working time.  The

11   Denham amendment would have prohibited states from requiring a motor carrier that pays

12   employees on a piece-rate basis to pay separate or additional compensation, so long as the piece rate

13   compensation is equal to or greater than the state's minimum wage.  *See* 161 Cong. Rec. H7659-

14   H7661 (daily ed. Nov. 4, 2015).  This amendment threatened to preempt Plaintiff's claims under

15   California law.  *Id*.  If passed, Defendants would have argued that the Denham Amendment

16   eliminated many, or all, of the claims in this case.  Cottrell Decl. at ¶¶ 12, 37.

17          Second, the Parties disputed whether the Motor Carrier Act exemption barred the FLSA

18   overtime claims in this case.  Defendants would have contended that their drivers drove or

19   transported goods in interstate commerce.  *Id*. at ¶ 37.  This argument was a substantial threat to

20   Plaintiff's claim for FLSA overtime.  *Id*.

21          Class Counsel considered the substantial risks posed by these arguments in negotiating the

22   Stipulation of Settlement.  *Id*.  Moreover, Class Counsel considered the risk that class certification

23   would not be granted and the risk that Plaintiff's claims would be defeated on the merits.  *Id*.  For

24   all of these reasons, the settlement is fair and reasonable.

25

26

27   ───────────────

28   [17] On an average per individual basis, assuming full participation and that all 187 class members are
     members of both classes, California Class Members will recover $2,010.27 and California FLSA

### 2.    The allocation of the settlement fund is fair.

Within each Class, the Net Settlement Proceeds are distributed based on the number of workweeks worked.  The Parties allocated 90% of the Net Settlement Proceeds to the California Class and 10% of the Net Settlement Proceeds to the California FLSA Class.  Due to the overlapping class definitions, all members of the California FLSA Class are also members of the California Class.  Individuals cannot recover overtime under both California and federal law in a single case.  Moreover, individuals cannot recover for the various California law claims twice.  The allocation formula reflects these realities by apportioning the significant majority of the recovery to the California Class while allowing individuals to obtain a modest premium by opting in to the California FLSA Class.  Cottrell Declaration ¶ 38.  This premium is modest consistent with the risk that the overtime damages sought under the FLSA would be unattainable based on defenses particular to the FLSA, such as the Motor Carrier Act exemption.  *Id.*  This allocation is fair.[18]

### 3.    The extensive informal discovery exchange between the Parties enabled them to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important to determining its reasonableness because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims.  *See Lewis v. Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979).  Informal discovery serves the same purpose, and it is treated as a strong factor in favor of settlement approval as long as the Parties had an opportunity to "form a clear view of the strengths and weaknesses of their cases."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in an extensive informal exchange of information to enable both sides

---

Class Members will recover $223.36.

[18] A class action settlement need not benefit all class members equally.  *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983).  Although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations.  *Id.*

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Meza, et al. v. S.S. Skikos, et al.*, Case No. 3:15-cv-01889-TEH

1 to assess the claims and potential defenses in this action.  Cottrell Decl. at ¶ 39.  Through this

2 informal cooperation, the Parties were able to accurately assess the legal and factual issues that

3 would arise if the case proceeds to trial.  *Id*.  In addition, in reaching this settlement, Class Counsel

4 relied on their substantial litigation experience in similar wage and hour class and collective actions.

5 *Id*.  Class Counsel's liability and damages evaluation was premised on a careful and extensive

6 analysis of the effects of Defendant's compensation policies and practices on Class Member's pay.

7 *Id*.  Ultimately, in mediation before David Rotman, an experienced mediator, the Parties used this

8 information to fairly resolve the litigation.  *Id*.

### 4. Litigating this action would delay recovery and would be expensive, time consuming, and risky.

11 The monetary value of the proposed Settlement represents a fair compromise given the

12 litigation risks and uncertainties posed by continued litigation.  Cottrell Decl. at ¶ 40.  Class

13 Counsel estimates that fees and costs would exceed $1,500,000 if this case were to go to trial as a

14 class and collective action.  *Id*.  Litigating the class and collective action claims would require

15 substantial additional preparation and discovery.  *Id*.  It would require deposition of experts, the

16 presentation of percipient and expert witnesses at trial, as well as consideration, preparation, and

17 presentation of voluminous documentary evidence and the preparation and analysis of expert

18 reports.  *Id*.  Recovery of the damages and penalties previously referenced would also require

19 complete success and certification of all of Plaintiff's claims.  *Id*.  As discussed in detail above,

20 there were substantial risks that stood between Plaintiff and complete success on all claims on the

21 merits.  *Id*.  Resolving this case by means of an early settlement will yield a prompt, certain, and

22 substantial recovery for the Class Members – a result that benefits the Class Members and the court

23 system.  *Id*.

### 5. The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

26 Courts routinely presume a settlement is fair where it is reached through arm's-length

27 bargaining.  *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826 at *14.  Furthermore, where

28 counsel are well-qualified to represent the proposed class and collective in a settlement based on

their extensive experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826 at *1.

Here, the Settlement was a product of non-collusive, arm's length negotiations.  Cottrell Decl. at ¶ 41.  The Parties participated in a full-day mediation before David Rotman, who is a skilled mediator with many years of experience mediating employment matters, including many wage and hour disputes.  *Id*.  This Settlement is also supported by Plaintiffs' Counsel, who have extensive experience litigating these types of class and collective wage and hour claims and have been qualified as counsel in numerous class actions.  *Id*.  In addition, the adversarial mediation resulted in a written memorandum of understanding that memorialized the core terms of the proposed settlement.  *Id*.  Subsequently, the Parties negotiated the long form Stipulation of Settlement.  *Id*.

### E.    The Class Representative Enhancement Payment is Reasonable

Named plaintiffs in class action litigation are eligible for reasonable service awards.  *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving $300,000 payment to each class representative in employment action settling before class certification) (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *see also Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving incentive payments up to $85,000 for named plaintiffs in employment action settling prior to class certification); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

In this case, Plaintiff will request a Service Payment of $7,500 to compensate him for the critical role he played in this case and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class.  *See* Cottrell Decl. at ¶ 42.  In agreeing to serve as the representative of the class and collective in this case, Plaintiff formally agreed to accept the responsibilities of representing the interests of all members of the California Class and the Califoria FLSA Class.  *Id*.  Defendants do not oppose payment of $7,500 as a reasonable Service Payment.  *Id*.  Moreover, the Service Payment is fair when compared to the payments approved in

similar cases.  *See, e.g.*, *Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco Cnty. Super. Ct., Sept. 3, 2010) (approving $10,000 service payment for each class representative).[19]

## F.    The Requested Attorneys' Fees and Costs are Reasonable

In their fee motion to be submitted fourteen days before the deadline for objecting to the Settlement, Class counsel will request an award of up to 33 1/3% of the Maximum Settlement Amount, or $233,310, in attorney's fees and an award of costs not to exceed $22,000.

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029; *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions. *See Gomez v. H&R Gunlund Ranches, Inc.*, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund).[20]

In this case, given the results achieved, the effort expended litigating the case, and the difficulties attendant to litigating this case, such an upward adjustment is warranted.  Cottrell Decl. at ¶ 43.  There was no guarantee of compensation or reimbursement.  *Id.*  Rather, counsel undertook

---

[19] *Castellanos* v. *The Pepsi Bottling Group*, No. RG07332684 (Alameda Cnty. Super. Ct., March 11, 2010) (approving service award of $12,500 in a wage and hour class action settlement); *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Cnty. Super. Ct., Sept. 22, 2009) (approving service award of $12,500 each to four class representatives in wage and hour class action); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Cnty. Super. Ct., Sept. 22, 2006) (approving an award of $30,000 to the class representative in a wage and hour class action); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000 in wage and hour case).

[20] *Wren*, 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund); *Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct. February 4, 2004) (approving award of attorneys' fees of 33% of the recovery); *Barela v. Ralph's Grocery Company*, No. BC070061 (Los Angeles Super. Ct. June 5, 1998) (same); *Davis v. The Money Store, Inc.*, No.

all the risks of this litigation on a completely contingent fee basis. *Id.* Defendants' vigorous and skillful defense confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.* Nevertheless, Plaintiff and Class Counsel committed themselves to pressing Plaintiff's legal claims to enforce the employees' rights and maximize the class and collective recovery. *Id.* The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class and collective here are precisely the reasons for multipliers in contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.*, 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) (contingent fee should be higher than a fee paid as services are performed because of the risk undertaken).

The requested attorneys' fees and expense award is also reasonable when compared to Class Counsel's lodestar amount. Cottrell Decl. at ¶ 44; *see, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"). Here, Class Counsel's current cumulative lodestar exceeds $500,000. Cottrell Decl. at ¶ 44. This amount will increase during the preparation of the final approval papers, preparation and attendance at any remaining hearing, correspondence with Class Members, and settlement administration and oversight. *Id.* Class Counsel incurred these fees performing the work described herein and in the accompanying declaration of Class Counsel. *Id.* Class Counsel respectfully submits that a one-third recovery for fees is modest and appropriate and should be preliminarily approved as fair and reasonable. *Id.*

Class Counsel's litigation costs to date are an estimated $17,000.00. *Id.* at ¶ 45. Class Counsel also requests reimbursement for these expenses, although the final cost award sought will not exceed $22,000. *Id.*

### G. The Proposed Notices and Claims Process is Reasonable

In order to protect the rights of Class and Collective members, the Court must ensure that they receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum*

99AS01716 (Sacramento Super. Ct. Dec. 26, 2000) (same).

*Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).  Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village LLC*, 361 F.3d at 575.

The Notice Packet, attached as **Exhibits 1-3** to the Stipulation of Settlement, and the manner of distribution negotiated and agreed upon by the Parties is "the best notice practicable."  Fed. R. Civ. P. 23(c)(2)(B).  The Notice Packets will be mailed directly to each Class Member.  Cottrell Decl. at ¶ 47.  In addition, the proposed Notice Packet is clear and straightforward, and provides information on the meaning and nature of both Class definitions, the class and collective action, the terms and provisions of the Stipulation of Settlement, and the monetary awards that the Settlement will provide to each Class Member.  *Id.*

The proposed Notice Packets also fulfill the requirement of neutrality in class notices.  Cottrell Decl. at ¶ 48; *see* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992).  The Notice Packet summarizes the proceedings necessary to provide context for the Stipulation of Settlement and summarizes the terms and conditions of the Settlement, including an explanation of how the settlement amount will be allocated between the named Plaintiff, Class Counsel, the Settlement Administrator, and the Class Members, in an informative, coherent, and easy-to-understand manner.  Cottrell Decl. at ¶ 48; Manual for Complex Litigation, *Settlement Notice*, § 21.312 (4th Ed. 2004).

The Notice Packet clearly explains the procedures and deadlines for requesting exclusion from the Settlement, objecting to the estimated award, the consequences of taking or foregoing various options available to Class Members, and the date, time, and place of the final settlement approval hearing.  Cottrell Decl. at ¶ 49.  Pursuant to Rule 23(h), the proposed Notice Packet also sets forth the amount of attorneys' fees and costs sought by Plaintiffs, as well as an explanation of the procedure by which Class Counsel will apply for them.  *Id.*  In addition, the Notice Packet

explains that Class Members have the opportunity to object to Class Counsel's motion for attorney's fees and costs. *Id.* The Notice Packet clearly states that the Settlement does not constitute an admission of liability by Defendant. *Id.* It makes clear that the final settlement approval decision has yet to be made. *Id.* Accordingly, the Notice Packet complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under the authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, *Certification Notice,* § 21.311; *Settlement Notice,* § 21.312 (4th ed. 2004).

Reasonable steps will be taken to ensure that all Class Members receive the Notice Packet. Cottrell Decl. at ¶ 50. Within five calendar days of the entry of the preliminary approval order, Defendant shall provide the Settlement Administrator a list of all Class Members, including their name, social security number, last known address, telephone number, and Individual Work Weeks. *Id.* The Settlement Administrator will check the addresses provided by Defendant using the NCOA Database before sending the Notice Packet via first class mail within ten calendar days from after receiving the Class Member information from Defendant. *Id.* If the Notice Packet is returned as undeliverable with a forwarding address the Settlement Administrator will remain the Notice Packet to the forwarding address. *Id.* If the Notice Packet is returned as undeliverable without a forwarding address, the Settlement Administrator will make all reasonable efforts to locate forwarding addresses, including a skip trace, and will resend the Notice Packet to a more recent address, if it is able to obtain one. *Id.*[21]

Because the proposed Notice Packet clearly and concisely describes the terms of the Settlement and the obligations of Class Members who participate, and the because the Notice Packet will be disseminated in a way calculated to provide notice to as many Class Members as

---

[21] Class members will have 45 days from the mailing of the Notice Packet to opt in to the California FLSA Class, opt out, object to the Settlement, and/or dispute the information shown in his or her Notice Packet. Cottrell Decl. at ¶ 51. If the Notice Packet is remailed, the Class Member receiving a remailed notice shall have until either 45 days from the initial mailing or seven days from the remailing, whichever is later, to respond to the Notice Packet. *Id.* Any Class Member who fails to

possible, the Notice Packet should be preliminarily approved.[22]

## H.    The Court Should Approve the Proposed Schedule

The Stipulation of Settlement contains the following proposed schedule, which Plaintiffs respectfully request this Court approve:

| | |
|---|---|
| Defendant to provide to the Settlement Administrator a database containing Class Members' contact information | 5 days after entry of the order granting preliminary approval |
| Settlement Administrator to mail Notice Packets | 10 days after receiving Class Members' contact information from Defendant |
| Class Counsel to file motion for attorney's fees and costs | 31 days after the Notice Packet is mailed |
| Deadline to postmark requests to opt out, objections to the Settlement, or disputes concerning the information shown in the Notice Packet | 45 days after the Notice Packet is mailed, or, for Class Members whose Notice Packets are remailed, the later of 45 days after the original mailing or 7 days after the remailing to that Class Member |
| Settlement Administrator to notify the Parties of the number of Exclusion Letters received | 2 days after the deadline to opt out, object, or dispute information in the Notice Packet |
| Deadline for Defendant to void the settlement if more than 10% of the California Class Members opt out | 7 days after the Settlement Administrator notifies the Parties of the number of Exclusion Letters received |
| Settlement Administrator to provide a declaration of due diligence and a proof of mailing with regard to the mailing of the Notice Packet | 7 days before the final approval hearing |
| Class Counsel to provide a draft of the final approval motion to Defense Counsel for review | 2 business days prior to the filing of the final approval motion |
| Class Counsel to file Settlement Administrator's verification that the notice process has been completed | On or before the date of the final approval hearing |
| Final Approval Hearing | |
| Payment Obligation and Class Release Date | (a) the date when the Final Approval Order is signed, if there are no objectors, or (b) in the event there are objectors, thirty-two days after service of notice of entry of the Final Approval Order and Judgment on the Parties and all objectors to the Settlement without any |

submit a timely request to exclude his or herself from the Settlement will be deemed a Class Member.  *Id*.

[22] Neither party has pled that this action falls within the scope of the Class Action Fairness Act ("CAFA").  Accordingly, CAFA notice is not required.

| | appeals or requests for review being taken, or (c) the date on which orders affirming said Final Approval Order and Judgment or denying review after exhaustion of all appellate remedies issue, if appeals or requests for review have been taken |
|---|---|
| Defendant to provide Settlement Administrator with settlement funds | 3 business days after Payment Obligation and Class Release Date |
| Settlement Administrator to mail or wire all required payments | 14 days after the Payment Obligation and Class Release Date |
| Deadline to cash Individual Settlement Payment checks | 180 days after checks are mailed |

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary approval of the Stipulation of Settlement.


Date: January 15, 2016                              Respectfully,


                                                    */s/ Carolyn Hunt Cottrell*_____
                                                    Carolyn H. Cottrell
                                                    Nicole N. Coon
                                                    SCHNEIDER WALLACE
                                                    COTTRELL KONECKY WOTKYNS LLP

                                                    Karen C. Carrera
                                                    Virginia Villegas
                                                    VILLEGAS CARRERA, LLP

                                                    Attorneys for Plaintiff and the Putative Class and Collective

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document(s) with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system on January 15, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

__/s/ <i>Carolyn Hunt Cottrell</i>___
Carolyn Hunt Cottrell
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
